IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| THOMAS HARBARGER, | § | |
| *Plaintiff*, | § § § | |
| v. | § | CASE NO. 2:24-CV-00442-JRG |
| UNITED STATES OF AMERICA, | § § § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion for Summary Judgment (the "Motion") filed by the Plaintiff, Thomas Asa Harbarger ("Plaintiff" or "Harbarger"). (Dkt. No. 14.) Also before the Court is the Response and Cross Motion for Summary Judgment in Opposition to the Motion of Thomas Harbarger for Certificate of Innocence ("Cross Motion") filed by Defendant United States of America ("Defendant" or the "Government"). (Dkt. No. 19.) Having considered the Motion, the Cross Motion, and for the reasons set forth herein, the Court finds that Plaintiff Thomas Harbarger is not entitled to a certificate of innocence under the Unjust Conviction and Imprisonment statute, 28 U.S.C. § 2513. Accordingly, Plaintiff's Motion should be **DENIED** and Defendant's Cross Motion should be **GRANTED**.

**I.    BACKGROUND**

On August 2, 2019, a Texas Department of Public Safety (DPS) trooper noticed a stopped vehicle on State Highway 43 with someone looking under the hood. (Dkt. No. 19 at 2; Brief for Appellant at 6, *United States of America v. Thomas Asa Harbarger*, No. 21-40332 (5th Cir. Oct. 18, 2021) ("Appellant Br.").)[1] The trooper stopped to render assistance and encountered Plaintiff, who claimed that the vehicle was disabled and that a wrecker was on its way. (Dkt. No. 19 at 2;

---

[1] Unless specified, all citations are made to the docket in the above-captioned case, Case No. 2:24-cv-00442-JRG.

Appellant Br. at 6.) The trooper conducted a check of the license plate and registration information and learned that the vehicle had been reported stolen.[2] (Dkt. No. 19 at 2; Appellant Br. at 6.) There was a discussion between the trooper and Plaintiff for purposes of identification. (Appellant Br. at 6; *see* Dkt. No. 19 at 2-3.) Initially, Plaintiff identified himself as "Mark Whitley." (Dkt. No. 19 at 2-3; Appellant Br. at 11.) Plaintiff also gave three different birthdates during the discussion. (Dkt. No. 19 at 2-3; Appellant Br. at 11.) Ultimately, Plaintiff was identified as Thomas Harbarger. (Appellant Br. at 6; *see* Dkt. No. 19 at 3.) The trooper made another computer check and determined that there was a warrant for Harbarger's arrest. (Appellant Br. at 6-7; Dkt. No. 19 at 3.) Consequently, Harbarger was arrested.[3] (Appellant Br. at 7; Dkt. No. 19 at 3.)

A second DPS trooper arrived and conducted an inventory search of the vehicle. (Dkt. No. 19 at 3; Appellant Br. at 7.) In the pocket of the driver's side door, the trooper found a bamboo tube approximately 7.5 inches long. (Dkt. No. 19 at 3; Appellant Br. at 7.) The tube had metal caps glued to both ends and had a fuse protruding through one end. (Dkt. No. 19 at 3; Appellant Br. at 7.) The tube was also filled with black powder and two pennies. (Dkt. No. 19 at 3; Appellant Br. at 7.) The trooper believed this device was a "pipe bomb." (Appellant Br. at 7.) The device was subsequently examined by agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). (*Id.*) The agents opined that the device was "consistent with an improvised explosive weapon commonly referred to as a pipe bomb." (*Id.*) When questioned about the device, Harbarger stated that it was used to remove or dismantle beaver dams and that he had used two similar devices on prior occasions. (Appellant Br. at 7; Dkt. No. 19 at 3-4.)

---

[2] The truck was reported stolen by the title-holder after Harbarger missed several payments. *United States v. Harbarger*, 46 F.4th 287, 288 n.2 (5th Cir. 2022). At the time of trial, Harbarger had resumed making payments on the vehicle. *Id.*

[3] Harbarger had an outstanding warrant because he failed to report to his parole officer as required. *Id.* at 288.

## II.    PROCEDURAL HISTORY

On December 4, 2019, a Criminal Complaint was filed against Harbarger alleging that on or about August 2, 2019, he committed the offense of Unlawful Possession of an Unregistered Firearm, in violation of 26 U.S.C. § 5861(d). (Dkt. No. 19 at 1.) On December 18, 2019, a federal grand jury in the Eastern District of Texas charged Harbarger, in a one-count indictment, with the offense of Unlawful Possession of an Unregistered Firearm, in violation of 26 U.S.C. § 5861(d). (Dkt. No. 19 at 1.)

A jury trial began on November 16, 2020. (Appellant Br. at 5.)  After the Government put on several witnesses, Plaintiff was the sole witness that testified during his case-in-chief. (*Id.* at 11.)  He admitted that he gave the troopers the wrong name because he knew there was a pending warrant for his arrest. (*Id.*; *see also* Trial Tr., *United States v. Harbarger,* Case No. 2:19-cr-00016-JRG, Dkt. No. 75 at 233:10-11 (E.D. Tex. June 22, 2021).)  He also admitted that he lied about never being arrested. (Trial Tr. at 245:14-18.) Although he previously told the ATF agents that he had used the devices to blow up beaver dams, he changed his story at trial and testified that "[he] never set one [of the bamboo devices] off." (*Compare* Appellant Br. at 8, *with* Trial Tr. at 240:16-19, 250:6-10.)  Instead, he claimed that "one of the guys that came to [his 4th of July] party" brought the devices and used them on the beaver dam. (Trial Tr. 238:24-239:13.)

On November 17, 2020, the jury unanimously found Harbarger guilty of illegally possessing an unregistered firearm, specifically a "destructive device," under the National Firearms Act ("NFA"). (Dkt. No. 14 at 4 (citing Dkt. No. 14-1).) On April 14, 2021, the Court sentenced Harbarger to seventy-two months of imprisonment, to be followed by three years of supervised release. (Dkt. No. 19 at 2; Dkt. No. 14 at 4 (citing Dkt. No. 14-1 at 2).)

Harbarger appealed his conviction to the Fifth Circuit. (Dkt. No. 19 at 2.)  On August 18, 2022, the Fifth Circuit reversed Harbarger's conviction on the grounds of insufficient evidence.

(Dkt. No. 14-2.) On September 19, 2022, Harbarger was released from prison after having been imprisoned for 3 years, 1 month, and 17 days. (Dkt. No. 14 at 5.)

A certificate of innocence is a prerequisite for filing suit against the United States under 28 U.S.C. §§ 1495 and 2513. Consequently, on June 14, 2024, Harbarger filed his Application for Certificate of Innocence pursuant to the Unjust Conviction and Imprisonment statute, 28 U.S.C. § 2513. (Dkt. No. 1 at 1, 3.) On March 25, 2025, Harbarger filed this Motion requesting that the Court issue or order a Certificate of Innocence stating that:

> His [Mr. Harbarger's] conviction [has] been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted, or on new trial or rehearing he was found not guilty of such offense, as appears from the record or certificate of the court setting aside or reversing such conviction, or that he has been pardoned upon the stated ground of innocence and unjust conviction; and,
>
> He did not commit any of the acts charged or his acts, deeds, or omissions in connection with such charge constituted no offense against the United States, or any State, Territory or the District of Columbia, and he did not by misconduct or neglect cause or bring about his own prosecution.

(Dkt. No. 14 at 2-3.) On April 23, 2025, the Government filed its Cross Motion. (Dkt. No. 19.)

### III. LEGAL STANDARD

The federal unjust conviction and imprisonment statute, 28 U.S.C. § 2513, permits exonerated federal defendants to sue the United States for damages for the years spent wrongly incarcerated. *United States v. Grubbs*, 773 F.3d 726, 732 (6th Cir. 2014). Many people understand this to mean that defendants who spend time in prison without a valid conviction should be compensated. *See Pulungan v. United States*, 722 F.3d 983, 985 (7th Cir. 2013). However, the purpose or effect of the statute instead is to compensate only those who are "actually innocent." *Grubbs*, 773 F.3d at 732. Moreover, the case law construing the statute makes clear that it provides a remedy to be applied only in "exceptional cases." *United States v. Lyons*, 726 F. Supp. 2d 1359, 1360 (M.D. Fl. 2010) (citing *United States. v. Graham*, 595 F. Supp. 2d 681, 684 (S.D.W.V. 2008)).

4

To this end, Section 2513(a) "set[s] a high bar" for obtaining the Certificate of Innocence. *Abu-Shawish v. United States*, 898 F.3d 726, 733 (7th Cir. 2018). First, the plaintiff must show that his "conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted." 28 U.S.C. § 2513(a)(1). Second, the plaintiff must show that he "did not commit any of the acts charged or his acts, deeds, or omissions in connection with such charge constituted no offense against the United States, or any State, Territory or the District of Columbia." 28 U.S.C. § 2513(a)(2). Third, the plaintiff must show that he "did not by misconduct or neglect cause or bring about his own prosecution." 28 U.S.C. § 2513(a)(2). A "reversal of the criminal conviction based on insufficiency of the prosecution's evidence does not entitle the defendant to a certificate of innocence." *United States v. Racing Servs.*, 580 F.3d 710, 712 (8th Cir. 2009) (citing *Osborn v. United States*, 322 F.2d 835, 840 (5th Cir. 1963)). This is because "[a] conclusion that the prosecutor did not prove a charge beyond a reasonable doubt differs from a conclusion that the defendant is innocent in fact." *Pulungan*, 722 F.3d at 985.

"The person seeking the certificate bears the burden of proof" and "preponderance of the evidence is the appropriate standard to apply in proceedings for a certificate of innocence." *Grubbs*, 773 F.3d at 732–33. Whether a petitioner is entitled to a certificate of innocence is a question committed to the discretion of the district court, and appellate review is under an abuse of discretion standard. *Abu-Shawish*, 898 F.3d at 736; *see also United States v. Davis*, 16 F.4th 1192, 1193 (5th Cir. 2021), *as revised* (Nov. 22, 2021) (adopting the abuse-of-discretion standard). Ultimately, district courts are afforded "substantial discretion" in determining whether to grant a certificate of innocence. *United States v. Graham*, 608 F.3d 164, 166 (4th Cir. 2010); *see also id.* at 177 ("[T]he court that heard the evidence at trial [has] the discretion to ascertain not just whether a defendant is not guilty, but whether he is in fact entitled to a certificate of innocence.").

## IV.    DISCUSSION

Harbarger contends that he has satisfied the three requirements on 28 U.S.C. § 2513(a). The Court will address each in turn.

### A.  Requirement 1: Whether Plaintiff's Conviction Has Been Reversed or Set Aside on the Ground that He is Not Guilty of the Offense of Which He was Convicted.

Harbarger must show that his conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted. 28 U.S.C. § 2513(a)(1).

Harbarger claims that this first requirement is already conceded by the Government. (Dkt. No. 14 at 11.) Harbarger, however, cites no such concession by the Government. Having reviewed the pleadings in this case, the Court finds that the Government has consistently disputed whether this requirement has been met. In the Original Answer, for example, the Government "admits Plaintiff's conviction was reversed [by] the United States Court of Appeals for the Fifth Circuit" but "denies" that it was reversed or set aside on the grounds that he was not guilty of the offense of which he was convicted. (*Compare* Dkt. No. 1 at ¶ 13, *with* Dkt. No. 7 at ¶ 13 (contending that Plaintiff mischaracterizes the Fifth Circuit's order.) The Government also argues in its Response that the Fifth Circuit "reversed Harbarger's conviction solely on the ground that there was insufficient evidence to support his conviction." (Dkt. No. 19 at 9.)

Harbarger also claims that this first requirement is met because the Fifth Circuit "clearly articulated the substantive basis for Plaintiff's innocence, emphasizing the misclassification of the bamboo stick and concluding it did not qualify as a destructive device under the NFA." (Dkt. No. 14 at 11 (citing *United States v. Harbarger*, 46 F.4th 287, 291-92 (5th Cir. 2022).)

Having reviewed the relevant authority, this Court finds and agrees with the many courts who consider an appellate court's reversal of a conviction sufficient to satisfy this first requirement. *See Pulungan*, 722 F.3d at 984 ("[Pulungan] was released after we reversed his conviction, holding

that the evidence did not show beyond a reasonable doubt that he knew that a license was required. . . . Our decision satisfies paragraph (a)(1)."); *Abu-Shawish*, 898 F.3d at 739 ("Abu-Shawish satisfies the first requirement of § 2513(a) because his conviction was reversed on the merits, *see Pulungan*, 722 F.3d at 984 (§ 2513(a)(1) satisfied by reversal of conviction because of insufficient evidence) . . . ."); *Grubbs*, 773 F.3d at 732 ("Reversal of a conviction for insufficiency of the evidence satisfies (a)(1)."); *United States v. Gaskins*, 6 F.4th 1350, 1359 (D.C. Cir. 2021) ("All agree that Gaskins has satisfied the first of the three requirements of section 2513(a)—that '[h]is conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted.' 28 U.S.C. § 2513(a)(1). Our decision on direct appeal overturning his narcotics conspiracy conviction for insufficient evidence established that he had not been proven guilty of the heroin conspiracy charge on which he was convicted. *See* J.A. 102.").

The Fifth Circuit's decision reversing Harbarger's conviction, therefore, satisfies 28 U.S.C. § 2313(a)(1). Accordingly, Harbarger has established the first requirement by a preponderance of the evidence.

### B. <u>Requirement 2</u>: Whether Plaintiff Has Shown that He is Actually Innocent

Under the second requirement, Harbarger must show that he either did not commit any of the acts charged <u>or</u> that his acts, deeds, or omissions in connection with such charge constituted no offense against the United States or any State. *See* 28 U.S.C. § 2513(a)(2); *see also Osborn*, 322 F.2d at 841 ("The alternative conditions of § 2513(a)(2) require that the claimant show either that he did not commit any of the acts or that his acts constituted no offense against the United States or a State. We accept appellant's argument that the 'or' in the statute means that he may prove either; he does not have to prove both."). Courts sometimes refer to this requirement as the "actual innocence" requirement. *See e.g., Gaskins*, 6 F.4th at 1360; *Davis*, 16 F.4th at 1194.

7

Harbarger contends that his act did not constitute an offense against the United States or any State because the bamboo device was not an unregistered firearm or destructive device under 26 U.S.C. §§ 5861(d) and 5845(s). (Dkt. No. 14 at 12-15.)

Section 5861(d) states that it is unlawful for any person to "receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d). "Firearm" includes a "destructive device." 26 U.S.C. § 5845(a). A "destructive device" is defined to include "any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellent charge of more than four ounces, . . . or (F) similar device." 26 U.S.C. § 5845(f). However, excluded from that definition is "any device which is neither designed nor redesigned for use as a weapon." 26 U.S.C. § 5845(f).

Harbarger contends that his bamboo device does not meet the statutory definition of a destructive device and that his actions in possessing the bamboo device did not constitute a crime. (Dkt. No. 14 at 15.) As support, Harbarger submits the expert report of Rick Vasquez. (Dkt. No. 14 at 14 (citing Dkt. No. 14-4).) In the report, Vasquez concludes that: "The bamboo device in this case did not qualify as a Destructive Device under Federal or Texas state law and, therefore, Mr. Harbarger was in fact innocent of any crime under state or federal law." (Dkt. No. 14-4 at 2.) Vasquez explains that "[i]n this case, a small section of bamboo was found with pyrodex powder. It was described as capped off at both ends without the weight of the pyrodex being ascertained. Because an item may appear to be an explosive, does not make it an explosive." (*Id.* at 6.) Vasquez also explains that "[a] thin-walled section of bamboo with pryodex and a fuse, may or may not explode. If the body made of bamboo is not strong enough to handle the pressure developed by the detonation, the powder will simply burn off and push out through a seam or a weak point." (*Id.* at 7.) Vasquez contends, therefore, that "[a] test of the device at issue could have been conducted,"

and "if proper research and testing protocols had been conducted, the charges would have been dropped." (*Id.* at 6, 8.) Vasquez further states that "[t]here was no evidence that [Harbarger's] device would explode and was capable of being used as a weapon." (*Id.* at 7.)

The Government responds that the evidence against Harbarger, while insufficient to prove his guilt beyond a reasonable doubt, is sufficient to demonstrate that he is not actually innocent. (Dkt. No. 19 at 12.) The Government asserts that Harbarger knowingly possessed the bamboo device, that it was functional at the time seized, that it was packed with explosive powder, that the bamboo tube (which contained pennies and metal caps) would fragment into smaller pieces and fly off at high velocity and destroy personnel or material, and that it was an unregistered destructive device. (*Id.*) Further, the Government asserts that Harbarger admitted to having previously detonated similar devices. (*Id.* at 13.)

Having considered the parties' arguments, the question before the Court is whether Harbarger has proven, by a preponderance of the evidence, that the bamboo device is not a destructive device under 26 U.S.C. § 5845(f). Here, Harbarger attempts to meet that burden using the expert opinion of Rick Vasquez. In the report, Vasquez explains that "[a] thin-walled section of bamboo with pryodex and a fuse, *may or may not* explode." (Dkt. No. 14-4 at 7) (emphasis added). Vasquez contends, therefore, that "[a] test of the device at issue could have been conducted." (*Id.* at 6, 8.) However, Vasquez never performed such a test to show that the bamboo device would not explode. Vasquez also takes issue with the fact that "[t]here was no evidence that [Harbarger's] device would explode and was capable of being used as a weapon." (*Id.* at 7.) The Court likewise does not find that Vasquez provides evidence that the bamboo device would not explode and that it was not capable of being used a weapon. Consequently, the problems that Harbarger now identifies with the Government's trial evidence apply equally to his own evidence

9

offered post-trial. Neither party tested the device to determine its explosive force. In this action, however, it is Harbarger's burden to show that the bamboo device is not a destructive device. Harbarger has not met his burden.

Ultimately, the evidence shows that Harbarger knowingly possessed a bamboo tube filled with pyrodex and two pennies, the ends of such tube were capped with metal, and of which a fuse protruded from one end. This device was functional. The evidence shows that it *may or not* explode. If such device exploded, fragments of bamboo, metal, and pennies may fly off the device at a high velocity and harm people or destroy property. Harbarger admitted that he previously detonated two similar devices before to blow up beaver dams. This evidence was not, as the Fifth Circuit said, sufficient to prove that the bamboo stick was an illegal explosive device "designed" as a weapon. Nonetheless, such evidence is sufficient for the Court to find Harbarger does not meet his burden on this second requirement.

Having considered the totality of the evidence, the Court concludes that Harbarger has not shown that he either did not commit any of the acts charged or that his acts, deeds, or omissions in connection with such charge constituted no offense against the United States or any State. Accordingly, Harbarger has not met his burden to prove that he is actually innocent under 28 U.S.C. § 2313(a)(2). *See Humphrey v. United States*, 52 Fed. Cl. 593, 597-98 (2002) ("A United States district court, to which a plaintiff must petition to receive a certificate of innocence, cannot issue the certificate unless it is satisfied of that petitioner's innocence. . . . It is clear that Congress carefully limited the availability of this remedy to those who are truly innocent. This Court has consistently insisted on a strict compliance with the statutory requirements."), *aff'd*, 60 F. App'x 292 (Fed. Cir. 2003).

Even though the Court finds that Harbarger has not satisfied the second requirement, the Court, for completeness, addresses whether Harbarger has met the third requirement.

### C. Requirement 3: Whether Plaintiff Has Shown That He Did Not Cause or Bring About His Own Prosecution by Misconduct or Neglect.

Under the third requirement, Harbarger must show that he did not by misconduct or neglect cause or bring about his own prosecution. *See* 28 U.S.C. § 2513(a)(2). This requirement is stringently enforced. *United States v. Moon*, 31 F.4th 259, 266 (4th Cir. 2022). The statute's "misconduct or neglect" language on its face captures noncriminal conduct and thus requires such an assessment. *Graham*, 608 F.3d at 174. Though neglectful conduct may be irrelevant in determining criminal guilt, section 2513(a)(2) renders this evidence relevant, indeed critical, in determining eligibility for a certificate of innocence. *Id.* at 175. Analyzing this third prong consequently requires an assessment of the virtue of a petitioner's behavior embracing both conduct originally charged as crimes and noncriminal conduct. *Moon*, 31 F.4th at 266.

Here, Harbarger attempts to prove this requirement by providing a sworn declaration. (Dkt. No. 14 at 15; Dkt. No. 14-3 at 2-4.) In the declaration, he states that "[he] did not bring about [his] own prosecution through misconduct or neglect." (Dkt. No. 14-3 at 2.) He further states that he did not do a number of things, including that he did not falsely confess to a crime, take a fall for someone else, attempt to flee, make a false confession, or remove evidence. (*Id.* at 2-3.) The Government responds that the evidence, even if not enough to convict him, prevents him from proving this third requirement. (Dkt. No. 19 at 13.) Namely, the Government asserts that Harbarger drove a vehicle that was reported stolen; that he lied about his name, his date of birth, and that he had previously been arrested; that he knowingly possessed the bamboo device; that he made contradictory statements about detonating similar devices; and that he refused to identify the individual that he later claimed made and used the devices. (Dkt. No. 19 at 12-13.)[4]

---

[4] Harbarger argues that this conduct should not be examined because it is not causally related to the charged offense. (Dkt. No. 14 at 19) (citing *Harbarger*, 46 F.4th at 91 n.9. (stating in dicta that "[i]t's too much of a stretch from

Upon assessing the virtue of Harbarger's conduct, the Court finds that Harbarger has not proven, by a preponderance of the evidence, that he did not by misconduct or neglect cause or bring about his own prosecution. *See* 28 U.S.C. § 2513(a)(2); *see also Moon*, 31 F.4th at 266 (holding that the third prong requires an assessment of the virtue of the plaintiff's behavior embracing both conduct originally charges as crimes and noncriminal conduct, then concluding that the plaintiff's conduct was "far from virtuous"). In this case, the Court is persuaded that Harbarger's own conduct brought about his prosecution through neglect or misconduct. Harbarger was found driving a vehicle reported as stolen because he failed to make the required payments. He lied to the trooper about his name, his date of birth, his arrest record, and the fact that his ID was inside his truck. Once his identity was discovered, he was arrested because he had an outstanding warrant for his arrest because he failed to report to his parole officer. Upon the instant arrest, his vehicle was searched and the bamboo device was found in his driver's side door. He knowingly possessed the device. The bamboo device was filled with pyrodex, contained metal caps and pennies, and reasonably could fragment and cause bodily harm or property damage. He admitted he had previously detonated two similar devices on prior occasions. Ultimately, the Court does not find that this is one of those "rare and unusual instances" requiring the Court to issue Harbarger a certificate of innocence. *See Burgess v. United States*, 20 Cl. Ct. 701, 704 (1990) ("Ideal justice would seem to require that in the rare and unusual instances in which a person has served the whole or part of a term of imprisonment, is later found to be entirely innocent of the crime of which he was convicted, should receive some redress. On the other hand, reversals in criminal cases are more frequently had on the ground of insufficiency of proof or on the question

---

these facts to draw inferences of his guilty *mens rea* concerning illegal weapons possession, which did not even become a potential issue until his truck had been searched.").) The Court rejects Harbarger's argument. Though the conduct may not allow an inference of a guilty *mens rea*, such conduct is relevant to whether Harbarger brought about his own prosecution by misconduct or neglect under the § 2313(a)(2) analysis.

as to whether the facts charged and proven constituted an offense under some statute. Consequently, it would be necessary to separate from the group of persons whose convictions have been reversed, those few who are in fact innocent of any offense whatever."); *Osborn*, 322 F.2d at 840 (noting that certificates of innocence are reserved for those who are "truly innocent"). Harbarger has failed to establish the third requirement for a certificate of innocence.

## V.     CONCLUSION

For the foregoing reasons, Harbarger's Motion is **DENIED** and the Government's Cross Motion is **GRANTED**. The Court finds that Plaintiff Thomas Harbarger is not entitled to a certificate of innocence under the Unjust Conviction and Imprisonment statute, 28 U.S.C. § 2513.

**So ORDERED and SIGNED this 14th day of August, 2025.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE